**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

KARI INGER OLSON
f/d/b/a PAWS AND CLAWS VETERINARY CENTER
a/k/a KARI INGER OLSON-IVENS

          Debtor

Case No. 06-30321

SANDRA A. GABEL, individually
and on behalf of
PAWS 'N' CLAWS VETERINARY CENTER
A Partnership under Tennessee law

          Plaintiffs

          v.

KARI INGER OLSON

          Defendant

Adv. Proc. No. 06-3087

**M E M O R A N D U M**

**APPEARANCES**:    F. D. GIBSON, III, ESQ.
    400 Ellis Avenue
    Maryville, Tennessee  37804
    Attorney for Plaintiffs

    LAW OFFICES OF MAYER & NEWTON
    John P. Newton, Jr., Esq.
    1111 Northshore Drive
    Suite S-570
    Knoxville, Tennessee  37919
    Attorneys for Defendant/Debtor

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint to Determine Dischargeability of Debts Owed to Plaintiffs (Complaint) filed by the Plaintiffs (Plaintiff)[1] on May 23, 2006, asking the court to award her a judgment against the Defendant/Debtor and to make a determination that the judgment is nondischargeable under 11 U.S.C. § 523(a)(6) (2005).

The trial was held on November 6, 2006. The record before the court consists of seven exhibits introduced into evidence, along with the testimony of eight witnesses, Donna Graham, Cathy Manning, Paul Martin Gabel, Libby Moses, Kim Ogle, Sharon Watson, and the parties.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 2006).

I

In June or July 2004, the parties discussed opening the Paws 'N' Claws Veterinary Center (Center), located in Tellico Village, Loudon, Tennessee, wherein the Debtor, a veterinarian, would perform all veterinary services, and the Plaintiff would provide bookkeeping and accounting services. The Plaintiff subsequently prepared an agreement outlining the details of the parties' partnership arrangement, including weekly draws and salaries, operating capital, business expenses, and profit-sharing (Agreement). *See* TRIAL EX. 1. Pursuant to the Agreement, the Plaintiff pledged her residence as collateral for an operating loan to the Center from Branch Banking & Trust (BB&T)

---

[1] To avoid confusion, the court will refer to the Plaintiffs, consisting of Sandra A. Gabel, individually and on behalf of Paws 'N' Claws Veterinary Center, a partnership under Tennessee law, as "Plaintiff" since Ms. Gabel filed this action on behalf of herself and as the representative of the failed partnership.

in the amount of $45,000.00, and the Plaintiff, her husband, Paul Martin Gabel, the Debtor, and her former husband executed personal guaranties for the BB&T loan.[2] *See* TRIAL EX. 1; TRIAL EX. 4.

Under the terms of the Agreement, the Debtor was to receive a weekly guaranteed payment of $600.00 for August and September 2004, with the payments to increase to $800.00 per week beginning in October 2004. TRIAL EX. 1 at ¶ 1. Also beginning in October 2004, the Plaintiff was to receive a guaranteed weekly payment of $300.00 from the Center as payment for accounting services and her capital contribution, and she was to hold a 30% interest in the Center until such time as the lien on her residence was satisfied, when the interest would decrease to 25%. TRIAL EX. 1 at ¶¶ 5, 11. The Agreement also contained provisions whereby the Debtor could purchase the Plaintiff's interest in the Center following payoff of the BB&T loan. TRIAL EX. 1 at ¶ 11. The Debtor made all payments on the BB&T loan through January 2006.

The partnership faltered in late 2004, and by December 27, 2004, the Plaintiff had removed all of her personal items from the Center. In late December 2004, the Debtor had the locks changed without notifying the Plaintiff, and a heated argument between the parties ensued. Subsequently, the Plaintiff filed a civil action against the Debtor for dissolution of the partnership in the Circuit Court for Loudon County, Tennessee. Following a hearing held on July 26, 2005, the Loudon County Circuit Court entered an Order on September 19, 2005, finding that, under the terms of the Agreement, the Debtor owed the Plaintiff $9,000.00 for services rendered and capital provided and awarded the Plaintiff a judgment in that amount. *See* TRIAL EX. 3.

---

[2] None of the documents evidencing this loan, all of which were admitted into evidence by agreement of the parties, contain signatures. The liability of parties and their spouses on the BB&T loan is, however, undisputed.

The Loudon County Circuit Court held a second hearing on October 26, 2005, which the Debtor did not attend. By its findings, memorialized in an Order entered December 2, 2005 (Judgment), that court: (1) reaffirmed the $9,000.00 judgment previously awarded to the Plaintiff against the Debtor; (2) required the Debtor to pay $100.00 per week to the Plaintiff towards the $9,000.00 judgment; (3) allowed the Debtor to use the capital collateral secured by the Plaintiff's residence for three years, until July 1, 2008, by which time the Debtor was required to have either paid the obligation owed to BB&T on the Plaintiff's residence or acquired alternate financing and held the Plaintiff harmless; (4) required the Debtor to pay the Plaintiff $300.00 per week for use of the capital collateral, to be direct deposited on the fifteenth and thirtieth of each month; (5) required the Debtor to make the monthly payments on the BB&T loan; (6) required the Debtor to maintain life insurance in an amount sufficient to satisfy the BB&T loan; (7) dissolved the parties' partnership effective June 30, 2005, and required the Debtor to notify creditors thereof and to provide the Plaintiff with tax returns for 2004 and 2005; (8) instructed the Debtor to ensure that the Plaintiff was held harmless from debts and liabilities of the partnership; (9) allowed the Debtor to keep and use the name of the partnership; and (10) awarded attorney's fees and court costs in the event of breach by either party. *See* TRIAL EX. 2. The Debtor did not make any payments that were required under the Judgment to the Plaintiff.

On February 24, 2006, the Debtor filed the Voluntary Petition commencing her Chapter 7 bankruptcy case. She listed the debt owed to BB&T secured by the Plaintiff's home as an unsecured debt in the amount of $42,021.30. Similarly, the Debtor listed the $9,000.00 Loudon County Circuit Court Judgment owed to the Plaintiff as an unsecured debt.

Pursuant to the Pretrial Order entered on September 6, 2006, the Plaintiff seeks to have the state court Judgment "declared non-dischargeable under provisions of 11 U.S.C. 523(a)(6)" and "[t]he issue for the Court is whether or not the provisions of 11 U.S.C. 523(a)(6) prevent these debts and obligations from being subject to the discharge granted." More specifically, "the Plaintiff seeks to exclude from discharge a money judgment of $9,000.00, an obligation to repay a note on the home of Plaintiff and an obligation to maintain life insurance on the life of Defendant until the house note is paid in full." PL.'S BR. at 1.

## II

Dischargeability of debts is governed by 11 U.S.C. § 523, which provides, in material part, that "[a] discharge under section 727[3] . . . of this title does not discharge an individual debtor from any debt— . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). In order to be successful under this subsection, the Plaintiff must prove the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 118 S. Ct. 974, 977 (1998). In other words, "[f]rom the plain language of the statute, the judgment must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). As the party seeking a determination of nondischargeability, the Plaintiff bears the burden of proving the necessary elements by a

---

[3] Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title[.]" 11 U.S.C. § 727(b) (2005). This accomplishes the goals of Chapter 7 to relieve "honest but unfortunate" debtors of their debts and allow them a "fresh start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))). The Debtor's discharge was entered on July 7, 2006.

preponderance of the evidence, *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991), and § 523(a) is strictly construed against the Plaintiff but liberally in favor of the Debtor. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998); *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 759 (Bankr. E.D. Tenn. 2003).

To carry her burden of proof with respect to "willfulness," the Plaintiff must prove that the Debtor either deliberately desired to cause the consequences of her actions, or she believed with reasonable certainty that such consequences would occur, raising a parallel to the elements for intentional torts. *Markowitz*, 190 F.3d at 464. "That a reasonable debtor 'should have known' that [her] conduct risked injury to others is simply insufficient. Instead the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a result of [her] behavior.'" *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002) (quoting *Markowitz*, 190 F.3d at 465 n.10).

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." RESTATEMENT (SECOND) OF TORTS § 8A, comment a (1964) (emphasis added).

*Elza v. United States*, 335 B.R. 654, 659 (E.D. Ky. 2006) (quoting *Geiger*, 118 S. Ct. at 977). "To find that a debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act, it is necessary to look into the debtor's mind, subjectively." *Monsanto Co. v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004).

6

Case 3:06-ap-03087-rs    Doc 37    Filed 11/14/06    Entered 11/14/06 15:22:46    Desc
Main Document    Page 7 of 11

And, with respect to § 523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004).

The Plaintiff has failed to produce any evidence to support her contention that the Debtor's actions were willful and malicious and that she intended to harm the Plaintiff. There is no dispute that the parties entered into a business arrangement whereby they agreed to operate the Center, each with her own responsibilities to the Center and each other, both occupational and financial. There is also no dispute that the Debtor breached the Agreement she entered into with the Plaintiff, in that she did not, among other things, pay her the weekly draw to which the Plaintiff was entitled. The resulting effect of this breach of contract is the entry of the Judgment by the Loudon County Circuit Court in December 2005. Nevertheless, "a breach of contract cannot constitute the willful and malicious injury required to trigger § 523(a)(6)." *Steier v. Best (In re Best)*, 109 Fed. Appx. 1, 8 (6th Cir. 2004) (citing *Salem Bend Condo. Assn. Section One v. Bullock-Williams (In re Bullock-Williams)*, 220 B.R. 345, 347 (B.A.P. 6th Cir. 1998)).

The Plaintiff's argument that the Debtor willfully and maliciously injured her by allowing her to obtain the BB&T loan on her home without intending to repay it and by using the proceeds of the loan for personal rather than business uses is not supported by the proof and does not meet the strict standard required for nondischargeability under § 523(a)(6). "[A]n 'injury' under section 523(a)(6) must constitute an invasion of the creditor's legal rights." *Best*, 109 Fed. Appx. at 8. "For purposes of determining whether a debtor knew his actions would injure the creditor's lien rights, a rebuttable presumption will arise when the debtor, despite having knowledge as to the implications

of the security agreement, took no action to protect the creditor's interest therein." *Best*, 109 Fed. Appx. at 9 (quoting *First Citizens Nat'l Bank v. Sherwood*, 2003 WL 22871603, at *4 (Bankr. W.D. Tenn. June 24, 2003) (citation omitted)).

This type of injury is inapplicable in this case, however, because the Plaintiff is not a secured creditor of the Debtor. The two of them were business partners, and that relationship was governed by the Agreement. The Agreement does not grant the Plaintiff any sort of security interest in any property owned by the Debtor, nor does the Agreement itself provide any remedy for the Plaintiff with respect to the BB&T loan or any other provision therein in the event the contract was breached. With respect to payment of the BB&T loan, the testimony of both the Plaintiff and the Debtor confirms that the Debtor made all required payments on the BB&T loan through January 2006, and that she only stopped making those payments when she filed for bankruptcy. Furthermore, the Plaintiff herself testified that the Debtor had promised to refinance the BB&T loan to have it placed in her own name, but that she must have been unable to do so, otherwise she would have. The fact that the Debtor made comments to the Plaintiff during an argument in December 2004 that if she pressed the issue, the Debtor would file for bankruptcy does not convert this breach of contract and unsecured debt into a willful and malicious act by the Debtor or a secured obligation.

The Plaintiff also argues that the doctrines of res judicata and collateral estoppel apply with respect to the issue of willful and malicious conduct, whereby the December 2, 2005 Judgment rendered by the Loudon County Circuit Court is nondischargeable. Under the Full Faith and Credit Statute, "judicial proceedings . . . [of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . ." 28

U.S.C.A. § 1738 (West 2006). Accordingly, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 104 S. Ct. 892, 896 (1984); *see also Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317-18 (6th Cir. 1997).

"The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from re-litigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (*quoting Federated Dep't Stores, Inc. v. Moitie*, 101 S. Ct. 2424, 2428 (1981)). Res judicata extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part or the transaction, or series of connected transactions, out of which the action arose." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir. 1996) (quoting RESTATEMENT (SECOND) JUDGMENTS § 24 (1982)). The Sixth Circuit Court of Appeals has held that res judicata is based upon the following four elements:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

The doctrine of collateral estoppel, also known as issue preclusion, is an "extension" of the doctrine of res judicata. *Ohio Cas. Ins. Co. v. Hryhorchuk (In re Hryhorchuk)*, 211 B.R. 647, 652 (Bankr. W.D. Tenn. 1997); *see also J.Z.G. Res., Inc.*, 84 F.3d at 214 ("The rules of res judicata

9

actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion."); *Home Ins. Co. v. Leinart*, 698 S.W.2d 335, 336 (Tenn. 1985). Under Tennessee state law, "collateral estoppel bars relitigation of an issue if it was raised in an earlier case between the same parties, actually litigated, and necessary to the judgment of the earlier case." *Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 54 (6th Cir. 1995) (citing *Massengill v. Scott*, 738 S.W.2d 629, 632 (Tenn. 1987)). "[M]aterial facts or questions, which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and . . . such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties." *Booth v. Kirk*, 381 S.W.2d 312, 315 (Tenn. Ct. App. 1963) (quoting *Cantrell v. Burnett & Henderson Co.*, 216 S.W.2d 307, 309 (Tenn. 1948)).

Application of collateral estoppel requires a demonstration that "1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995). Here, although the Loudon County Circuit Court rendered a final judgment between the parties, based upon the same facts, the causes of action are not the same, and collateral estoppel does not apply, because the issue of malicious and willful intent was not litigated and does not even appear to have been raised. The Plaintiff urges the court to find that the state court's use of the hold harmless language in the Judgment was an extraordinary remedy, and if the Debtor's conduct had not been willful and malicious, the court would not have used the hold harmless language; however, there is no basis for the court to make such a leap, and

it refuses to do so. There is nothing in the Judgment to indicate that the judge included hold harmless language because the Debtor's conduct was willful or malicious. In fact, the Judgment does not even make any findings of fact concerning the Debtor at all. It simply sets forth the awards of judgment to the Plaintiff with respect to the dissolved partnership and breach of the Agreement, and sets forth the acts that the court was requiring the Debtor to perform as a result thereof.

In summary, the Plaintiff has not met her burden of proof that the Debtor acted willfully and maliciously such that the $9,000.00 or any other aspect of the Loudon County Circuit Court Judgment is nondischargeable under 11 U.S.C. § 523(a)(6). Simply stated, the parties entered into a business arrangement that went bad. Section 523(a)(6) has no application to the resulting breach of contract action that ensued. Accordingly, the debt was discharged on July 7, 2006, when the Discharge Order was entered in the Debtor's case, and the Plaintiff's Complaint shall be dismissed.

A judgment consistent with this Memorandum will be entered.

FILED:  November 14, 2006

> BY THE COURT
>
> */s/  RICHARD STAIR, JR.*
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE